607 A.2d 988

JODI GRANDUKE, PLAINTIFF–APPELLANT, v. CONSTANTINOS
P. LEMBESIS, DEFENDANT, AND GERALD A. GRANDUKE,
DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued March 16, 1992—Decided April 10, 1992.

Before Judges PETRELLA, R.S. COHEN and KESTIN.

*Richard C. Swarbrick* argued the cause for appellant.

*Scott A. Telson* argued the cause for respondent (*Lombardi & Lombardi,* attorneys; *Nancy A. Turk,* on the brief).

The opinion of the court was delivered by

PETRELLA, P.J.A.D.

The issue in this appeal is the effect of the failure of plaintiff Jodi Granduke to accept a settlement offer where the insurance policy limits were paid into court prior to trial on behalf of a defendant thereafter found not negligent by the jury. Defendant Gerald A. Granduke (plaintiff's husband) was found by the jury to be free from negligence. The trial judge granted defendant Granduke's motion and ordered return of the deposit

to Rider Insurance Company (Rider), which had tendered its policy limits in an offer of settlement on its insured's behalf.

On her appeal, plaintiff Jodi Granduke argues that she should be entitled to the monies paid into court by Rider, *see R.* 4:57, as a settlement of what she refers to as Rider's obligation to her. She also argues that Rider should be estopped from recovery of the monies deposited into court.

We reject plaintiff's arguments. The fact is that she never accepted Rider's settlement offer. The jury eventually returned a verdict of no liability with respect to her husband.

On January 13, 1986, plaintiff was riding on the back of a motorcycle driven by her husband. A vehicle driven by defendant Constantinos P. Lembesis struck the Granduke motorcycle at a "T" intersection, causing serious injuries to plaintiff.[1]

Rider offered its $15,000 policy limit in exchange for a release in favor of defendant Granduke. Rider's attorney's October 16, 1987 letter advised plaintiff's attorney:

> I am authorized by Rider Insurance Company to offer to your client, Jodi Granduke, the policy limit of $15,000. In exchange for payment of $15,000, Rider Insurance Company expects from your client, Jodi Granduke, a complete release in favor of Rider's insured, Gerald A. Granduke.
>
> If the policy limit of $15,000 is not accepted within 30 days, I will file an appropriate Motion for leave to deposit the policy limit of $15,000 into court.

When plaintiff failed to respond, the money was deposited into court under an order entered on December 21, 1987.

A bifurcated trial on liability was held in November 1989. The jury found Lembesis 100% negligent.[2] On December 7, 1990 plaintiff settled with Lembesis for $300,000 and filed a

---

[1] The severity of plaintiff's injuries are not in dispute and are not relevant here. The issue is solely whether Rider is liable for payment of damages in the amount of the liability insurance that defendant Granduke carried with Rider, which Rider deposited into court, when the jury did not find him negligent.

[2] As required by *R.* 4:21A *et seq.* and *N.J.S.A.* 39:6A–24 through 35, the trial was preceded by an arbitration proceeding. The arbitrator's award of $210,-000, with apportioned liability of 30% to Lembesis and 70% to defendant Granduke was rejected. *See R.* 4:21A–6 and *N.J.S.A.* 39:6A–31.

stipulation of dismissal, with prejudice, which terminated the litigation. One month later, plaintiff moved for payment of Rider's deposited $15,000 policy limits. Rider successfully cross-moved for return of its deposit.

■ Since the jury had absolved defendant Granduke of liability, effectively determining that he (and hence Rider, his insurer) had no obligation to compensate plaintiff for her injuries, the judge properly found she had no right to the funds on deposit. Plaintiff never accepted the settlement or offered a release prior to the conclusion of the liability trial. After a verdict of no liability of defendant Granduke, plaintiff had no right to any portion of the deposit. That the settlement offer was not expressly rejected by plaintiff does not entitle her to funds deposited, especially after a determination of no liability.

■ *R.* 4:57, under which the funds were deposited into court, does not resolve ownership of deposited funds. Questions of ownership and entitlement depend on adjudication of the underlying claims between the parties. The court retains control over deposited funds until it adjudicates the rights of the parties to the monies. *See* 23 *Am.Jur.*2d, *Deposits in Court,* § 13 (1983).

■ Although our caselaw has not discussed what should be an obvious proposition, we concluded in *Kostick v. Janke,* 223 *N.J.Super.* 311, 538 *A.*2d 834 (App.Div.1988), *affirming,* 221 *N.J.Super.* 37, 40–41, 533 *A.*2d 417 (Law Div.1987), that a fund deposited with the court is not an asset of the depositing party, but is a fund subject to disposition by the court. We stated:

... [W]e reiterate a point made by Judge Ciolino that the deposit was made in this case without expectation that the funds would be returned. 221 *N.J.Super.* at 41 [533 *A.*2d 417.] While there was a condition precedent to the withdrawal of the funds, namely the giving of a release and a stipulated dismissal of the action, the only question was when this event would occur, not whether it would occur. [*Id.* [223 *N.J.Super.*] at 314–315 [538 *A.*2d 834] (footnote omitted)].

This language does not require a party depositing funds with the court in connection with a settlement offer to impose a condition on the deposit in order to assert a right ultimately to

recover all or part of those funds. As we noted in *Kostick*, upon a deposit in court, control is relinquished to the court, not to an opposing claimant. In *Kostick*, a defendant's insurer had deposited funds pending resolution of the availability of excess insurance funds from other insurers. There was neither a liability issue regarding that defendant (who admitted liability), nor a dispute as to whether plaintiff's damages would exceed the amounts available from all primary insurers. Thus, although *Kostick* denied the depositor's request to withdraw the deposit under the facts in that case, it has no applicability here.

*AC–Berwick Transporters, Inc. v. Sendell*, 176 *N.J.Super.* 339, 423 *A.*2d 321 (Ch.Div.1980), upon which plaintiff also relies, is likewise distinguishable. In that breach of contract case plaintiffs sought to deposit into court installment payments due to defendant under the contract. *Id.* at 340, 423 *A.*2d 321. This application was denied as an attempt to circumvent the requirements of an action to seize or attach defendant's assets. *Id.* at 341, 423 *A.*2d 321.

Neither *Kostick* nor *AC–Berwick* supports plaintiff's contention that a depositor loses all rights to funds deposited in court without imposing express conditions. Rather, *Kostick* supports Rider's position that disposition of the deposited funds is governed by the determination in the underlying case.

██ It is beyond dispute that a plaintiff who fails to accept a settlement offer may not recover the offered settlement if defendant prevails at trial. That the policy limit has been deposited into court does not affect this principle. The other party is not automatically entitled to deposited funds regardless of the outcome of the underlying case.[3]

---

[3]Analogously, under *R.* 4:58–1, a filed offer of judgment that has not been accepted or withdrawn remains open only until the earlier of the tenth day before the first scheduled trial date or call, or 90 days after the offer has been served on the opposing party. Thereafter, under *R.* 4:58–1, evidence of the offer is not admissible except in post-trial proceeding to fix costs and fees. *See also R.* 4:58–2 and *R.* 4:58–3.

In our case, Rider's deposit into court was consistent with its obligation to make a good faith settlement offer, *Rova Farms Resort, Inc. v. Investors Ins. Co. of America,* 65 *N.J.* 474, 496, 323 *A.*2d 495 (1974), and its desire to toll the running of prejudgment interest, *R.* 4:42–11(b).

In *Levin v. Goodman,* 107 *N.J.Eq.* 473, 153 *A.* 476 (E. & A. 1931), a mortgage provided for release of its lien upon payment of a set sum. Upon refusal of the mortgagee to accept the receiver's tender of that amount in exchange for a release of the lien, the receiver deposited the money in court in conjunction with an action for specific performance of the mortgage. *Id.* at 474, 153 *A.* 476. While the action was pending, the mortgage lien was extinguished in a foreclosure action. *Id.* at 474–475, 153 *A.* 476. The receiver then applied for and obtained return of the deposit over the objection of the mortgage holder who argued that the deposit belonged absolutely to the party for whose benefit it was paid. *Id.* at 475, 153 *A.* 476. The court acknowledged that the mortgage holder would have been entitled to the deposit if the tender had been accepted in exchange for a release before the lien was extinguished by the foreclosure sale. However, once the lien was extinguished, the mortgage holder had no interest in the deposit, and it was held properly refunded to the receiver. *Id.* at 476–477, 153 *A.* 476.

In a related vein, it has been recently held that a settlement offer can be withdrawn where a deposit was made into court, but the jury liability verdict was less than the amount deposited. Thus, in *Shevlin v. Prudential Commercial Ins. Co.,* 256 *N.J.Super.* 691, 607 *A.*2d 1062 (Law Div.1991), Prudential made a $90,000 settlement offer, which was rejected. The jury verdict found 50% liability for each of the defendants and assessed damages of $55,000. Prudential, as insurer for one of the defendants, withdrew its settlement offer. The court held that Prudential was not bound to arbitrate damages thereafter under the arbitration provisions of its policy.

Plaintiff's contention that she could not have accepted Rider's settlement offer without compromising her right of recovery, as occurred in *Theobald v. Angelos*, 44 *N.J.* 228, 239–241, 208 *A.*2d 129 (1965), is mistaken. As a result of enactment of the Comparative Negligence Law, *N.J.S.A.* 2A:15–5.1 *et seq.*, comparative contribution applies, and "only the percentage amount equal to the percentage of negligence attributable to the settling defendant is deducted, no matter what the size of the settlement." *Kotzian v. Barr*, 81 *N.J.* 360, 365, n. 2, 408 *A.*2d 131 (1979), quoting *Rogers v. Spady*, 147 *N.J.Super.* 274, 278, 371 *A.*2d 285 (App.Div.1977). Plaintiff could have chosen a different trial strategy by settling with Rider, and proceeding against Lembesis. Lembesis could have established at trial, the percentage of negligence attributable to defendant Granduke. *See N.J.S.A.* 2A:15–5.2b. However, if plaintiff succeeded in establishing sole negligence on the part of Lembesis, she would have been able to retain Rider's settlement sum without reducing her total recovery. *See Rogers v. Spady, supra* (147 *N.J.Super.* at 277, 371 *A.*2d 285); *N.J.S.A.* 2A:15–5.3; *see also Sullivan v. Combustion Engineering*, 248 *N.J.Super.* 134, 143–144, 590 *A.*2d 681 (App.Div.1991), *certif. denied*, 126 *N.J.* 341, 598 *A.*2d 897 (1991); *Crispin v. Volkswagenwerk AG*, 248 *N.J.Super.* 540, 571, 591 *A.*2d 966 (App.Div.1991), *certif. denied*, 126 *N.J.* 385, 599 *A.*2d 162 (1991).

We reject plaintiff's equitable estoppel argument. The essential elements of equitable estoppel are not present here. *See Miller v. Miller*, 97 *N.J.* 154, 163, 478 *A.*2d 351 (1984); *State v. United States Steel Corp.*, 22 *N.J.* 341, 358, 126 *A.*2d 168 (1956); *Feldman v. Urban Commercial, Inc.*, 70 *N.J.Super.* 463, 474–475, 175 *A.*2d 683 (Ch.Div.1961). In the trial court, plaintiff merely asserted that she was misled to believe that she was entitled to the deposit because of Rider's delay in requesting the deposit's withdrawal. In calculating the interval, plaintiff uses the date that the court permitted the deposit (December 21, 1987) to the date of Rider's cross-motion for its release (January 11, 1991). However, the case was not finally

disposed of until plaintiff and Lembesis filed the stipulation of dismissal on December 7, 1990. An application to withdraw the deposit was not appropriate until after that date because of the possibility that Lembesis would appeal the jury's liability verdict. *See R.* 2:4-1. There was no undue delay in requesting withdrawal of the deposit since Rider's cross-motion was filed only 34 days after the dismissal. Therefore, there is no viable basis for equitable estoppel.

Affirmed.